ACCEPTED
01-14-00539-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 11:34:29 AM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00539-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 11:34:29 AM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIRST SUPREME JUDICIAL DISTRICT OF TEXAS

**HOANG-YEN THI DANG,**
     **and**
**TAN DUC CONSTRUCTION LIMITED COMPANY,**
     *Appellants*

**v.**

**JIMMY TRAN,**
     *Appellee and Conditional Cross-Appellant*

## TRAN'S BRIEF AS APPELLEE, RESPONSIVE TO THE BRIEF OF APPELLANT DANG

Matthew S.  Muller
1445 North Loop West, Ste.  760
Houston, Texas 77008
713 227 1888
713 227 1881 fax

Finis Cowan
One Greenway Plaza, Ste. 100
Houston TX 77046
832 341 4599
713 561 3691 fax

OF COUNSEL:
William Bowers
Olney G. Wallis
*Attorneys for Appellee Tran*
**ORAL ARGUMENT REQUESTED**

**(a)** *Identity of Parties and Counsel*

Appellee/Conditional Cross-Appellant: Jimmy Tran

*counsel on appeal:*
Matthew Muller
Finis Cowan
William Bowers
Olney Wallis

Appellant/Conditional Cross-Appellee: Hoang-Yen Thi Dang
*counsel on appeal:*

Alan Daughtry
3355 West Alabama, Suite 444
Houston, Texas 77098

**(b)** *Table of Contents*

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Index of Authorities

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Certificate under T.R.A.P. 9.4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Index to Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**(c)** *Index of Authorities*

*§23.001, Tex.Prop.Code.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*

*City of Brownsville v. Alvarado, 897 S.W.2d 750 (Tex. 1995).* . . . . . . . . . . . . . . . *28*

*C&R Transport v. Campbell, 406 S.W.2d 191 (Tex. 1966)..* . . . . . . . . . . . . . . . . *28*

*Ernst & Young, L.L.P. v. Pac. Mut. Life  Ins.*, 51 S.W.3d 573(Tex. 2001). . . . . . . *32*

*Formosa Plastics Corp. USA v. Presidio Engineers, 960 S.W.2d 41 (Tex.1998)*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *30*

*Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc., 201 S.W.3d 272, 283–86 (Tex.
App.—Houston [14th Dist.] 2006, no pet.).* . . . . . . . . . . . . . . . . . . . . . . . . . *25*

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). . . . . . . . . . . . . . *31*

*MCN Energy Enters., Inc. v. Omagro De Colombia, LDC, 98 S.W.3d 766, 771
(Tex. App.—Fort Worth 2003, pet. denied).* . . . . . . . . . . . . . . . . . . . . . . . . *25*

*St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2002).* . . . . . . . . . . . . . . . *25*

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379,
385 (Tex. App.- Houston [14th Dist.] 2007, no pet.). . . . . . . . . . . . . . . . . . . *32*

**(d)** *Statement of the Case*

Jimmy Tran (Appellee, "Tran") sued his (then-) wife Hoang-Yen Thi Dang (Appellant, "Dang") for divorce, and *inter alia* for fraud, breach of fiduciary duty, civil conspiracy, violations of the Fraudulent Transfer Act, and breach of a prenuptial agreement in the District Court of Harris County, 309th Judicial District. Dang asserted in bar a default judgment she alleged she had taken in Vietnam against Tran; the District Court of Harris County refused to find comity, after a multi-day evidentiary proceeding, and declined to recognize the alleged foreign default judgment; Appellant raises no issue on appeal about the alleged foreign judicial proceeding. After a six week jury trial in January-February 2014, the trial Court rendered Judgment for Appellee upon the Jury's unanimous verdict finding, by clear and convincing evidence, that Appellant Dang committed fraud against her (then-) husband Appellee. The Judgment awards actual damages of $650,000, and exemplary damages of $50,000, the amounts found by the Jury. No relief was granted to Tran against co-Respondent Tan Duc Construction Limited Company.

**(e)  *Statement Regarding Oral Argument***

Appellee Tran requests Oral Argument. The trial record is lengthy. Appellee believes the opportunity of Oral Argument will support his presentation of the case to this Honorable Court.

**(f)  *Issues Presented[1]***

**Appellee's Counterpoint No. 1** (In response to Appellant's Issue I[2], Page 14 of Appellant's Brief) –

> **Appellant's "Issue I" declares simply "the verdict cannot stand" but in itself presents no legal argument and serves merely as a generic umbrella for its specific sub issues, which Appellant numbers A1, A2, A3 and A4. Nor does Appellant list any section "IB."**

**Appellee's Counterpoint No. 2** (In response to Appellant's Issue IA[3], Page 14 of Appellant's Brief) –

> **Dr. Lehrer was not called as a real estate appraiser but as an expert on the economic damages Tran sustained because of Tran's conduct; he followed generally accepted methodologies of estimating such damages**.

---

[1] Appellant's brief contains (on its page 2) a list of issues presented but that list does not correspond to the issues Appellant actually argues in her Brief. The points which Appellant argues in her Brief are those which appear in Appellant's Table of Contents. Appellee responds to those points in this Brief.

[2] *"I. The Jury's Finding of $650,000 in Damages for the 11440 Memorial Property Cannot Stand."*

[3] *"Lehrer's Opinion Testimony on the Damages for Tran's Lost Equity Interest in the Memorial Is Unreliable and Does Not Comport with Any Recognized Methodologies for Assessing the Value of Real Property."*

**Appellee's Counterpoint No. 3** (In response
to Appellant's Issue IA1[4], Page 19 of Appellant's Brief) –

> **Dr. Lehrer's opinion of economic damages was not an appraisal of Tran's former undivided 25% fee title interest in the Memorial Property; the value of the Memorial Property that Dr. Lehrer used in his calculation of damages was taken from other, independent, evidence of value in the record, including, *inter alia*, the value agreed to in the parties' Prenuptial Agreement, documents introduced in evidence by Dang and other evidence of value.**

**Appellee's Counterpoint No. 4** (In response
to Appellant's Issue IA2[5], Page 24 of Appellant's Brief) –

> **Dr. Lehrer did in fact calculate the net value of Tran's 25% interest in the Memorial Property, using evidence in the record, including independently established value evidence and evidence of the obligations against the property; Dr. Lehrer used the undisputed foreclosure sale price as part of the evidence of the encumbrance and obligations against the property.**

---

[4] *"Lehrer's opinion hinges on his valuation of Tran's 25% equity interest of the 14110 Memorial property, but Lehrer did not even do an appraisal of the property—this is pure speculation."*

[5] *"Lehrer did not consider the "net" value of Jimmy Tran's equity interest: The foreclosure sales price did not reflect any equity and this is not reliable or sufficient evidence of damages."*

**Appellee's Counterpoint No.5** (In response
to Appellant's Issue IA3[6], Page 37 of Appellant's Brief) –

> **The appraisal techniques of using comparable sales and making appropriate adjustments are not applicable to Dr. Lehrer's opinion of damages since he did not testify as a real estate appraiser but as an expert on economic damages. However, the relevant values were established by independent evidence (See Appellee's Counterpoint No.3), and his opinion took into account sales data of comparable properties in the Memorial area of Houston.**

**Appellee's Counterpoint No. 6** (In response
to Appellant's Issue IA4[7], Page 47 of Appellant's Brief) –

> **Dr. Lehrer's opinion of damages (which was not an appraisal) properly used HCAD and other data to study trends of real estate values in the Memorial Area of Houston to determine if the damages factors should consider increases in value of property in that area; in any event, any incorrect application of this data was harmless because the amount of the jury's award is consistent with the values given in independent evidence without upward adjustment for HCAD and sales trend data described by Dr. Lehrer.**

---

[6] *"Contrary to established authority, Lehrer did not consider any "comparable sales": He did not look at sales, did not make any adjustments at all, and did not consider the unique value of Tran's 25% minority equity interest."*

[7] *"Lehrer improperly took HCAD data and applied global percentage increases in valuations county-wide to establish value."*

7

**Appellee's Counterpoint No.7** (In response to Appellant's Issue II[8], Page 57 of Appellant's Brief ) –

> **The award of fraud damages to Tran was not contingent on proof of the formation of any agreement between Tran and Dang regarding her interest in other businesses; rather, the damages were awarded on the basis of an independent cause of action that Tran pled, proved, submitted separately in Issue 9, and obtained a jury verdict on that cause. To the extent that Appellant implies any conflict, there was none because the jury refused to find the agreement to which Appellant refers.**

**Appellee's Counterpoint No. 8** (In response to Appellant's Issue III[9], Page 61 of Appellant's Brief) –

> **The District Court instructed the jury on the damage issue in the Charge of the Court; to the extent that there may have been any error, it was waived intentionally or not properly preserved and in any event was harmless.**

**(g)** *Statement of Facts*

1. Jimmy Tran, Appellee ("Tran") met Hoang-Yen Thi Dang, Appellant ("Dang") in Houston. Tran and Dang did business together, and decided to marry in 2007.

2. Prior to marriage Dang and Tran signed a prenuptial agreement on August 13, 2007 (PX 1). Tran once individually solely owned the property at 11440 Memorial Drive

---

[8] "Judgment Should Be Rendered Against Tran: the Damages Awarded Tran Were Contingent upon an Agreement for Interests in Tan Duc, Which the Jury Refused to Find."

[9] "The Judgment must Be Reversed Due to Charge Error: There Was No Measure of Damages for the Memorial Property."

in Houston ("Memorial property") in fee, which Dang and Tran agreed was worth $5.8 million on August 13, 2007 (PX 1, p. 21, n. 6).

3. "Tran" and "Dang" were married on September 19, 2007, at the Memorial property.

4. At the time of their marriage, Tran, a citizen of the United States, was a general contractor, and was developing projects in the Houston area.

5. On October 10, 2007, Dang[10] got Tran to transfer his sole ownership in the Memorial property to Dang, her two grown daughters, and Tran, 25 % to each. (PX 9). Dang promised Tran that she would take care of their[11] outstanding debts[12], including the note on the Memorial property, and continued to do until March 2010 (5 RR 123-124).

6. During 2008, the housing and building market in Houston was depressed. "Dang", a Vietnam citizen and a woman of substantial means and prominence in Vietnam,

---

[10] Dang decided at one time to divide fee title ownership of 11440 Memorial into four equal shares (CR: 120, Vol. 3)

[11] Dang asked Tran to join a real estate development partnership in 2005 (CR: 94, Vol. 3). Tran invested $220,000 for a 20% share of a shopping center and subdivision. (CR: 97, Vol. 3) He became a limited partner in Venus Plaza LP whose general partner was Dang's company, Handsel. (CR: 122, 127, Vol. 3) He managed the construction and she "kept all the financing" and "handled all of the paperwork." (CR: 102, 105) She was his "boss." (CR: 106, Vol. 3). Dang and Tran were also partners in the 11440 Memorial Drive property. (Vol. 7, CR: 122). Tran loved and trusted Dang, "everything she say is right to me . . ." (CR: 107, 115, Vol. 3)

[12] Dang paid the debts (including the interim and permanent financing) on all their jointly held property through a company she controlled, U.S. Southern Homes. (CR: 117, Vol. 3)

convinced "Tran", her spouse, to return with her to Vietnam. "Tran" agreed and went to Vietnam to be and work with "Dang."

7. "Dang" and "Tran" arrived in Vietnam during September 2008, and settled in around the Ho Chi Minh City ("Saigon") area, "Dang" told "Tran" that she had created a company, Vietnam Land ("VNL"), that would build big projects and business complexes and buildings in Vietnam, and that he (Tran) was to be the President of VNL.

8. During the first few weeks of his arrival in Vietnam, Tran was taken to a Government office by "Dang" in connection with the formation of VNL. Shortly afterwards, Tran was taken to an office building on 300 hectares ("300 hectares") owned by Tan Tao Investment and Industry Corporation ("ITA), named in the prenuptial agreement, and Tran received an official document designating him as President of Vietnam Land.

9. In September 2008, VNL was a new Vietnam company, wholly owned by ITA. ITA was a Vietnam company controlled by "Dang", who along with companies controlled by her owned 66% of the shares of ITA. Dang was Chairman of the Board of ITA. ITA is identified in the schedules of the prenuptial agreement.

10. Tran had an office at the "300 Hectares" in a then existing office building. During the first six months after his arrival, Tran hired a superintendent and workers,

started and finished fourteen condominiums and completed an eight story office building, and a shell for about sixty apartments on the "300 Hectares".

11. "Dang" wanted to build a university (Tan Tao University) on the "300 Hectares", and Tran, through VNL built roads and a bridge to connect the Phase I complex, with office and residential buildings, to the Phase II complex, which was to house the university. ITA owned both the land and the buildings constructed by VNL while Tran was President.

14. During March 2010, Dang told Tran that she wanted to convey the Memorial property to Tan Duc Construction, a company controlled by ITA. Dang variously told Tran that she would see that their individual interests would be protected[13] by Tan Duc, and that he would not lose any of his interests as a result of the transfer, that for tax reasons and loan reasons he should do as she instructed, and that he would have 25% of Tan Duc if he did as she instructed, and relying on those representations or some of them, Tran conveyed his 25% interest in the Memorial property by Deed signed at the US Embassy in Ho Chi Minh City (Saigon), Vietnam, to Tan Duc Construction in April, 2010.

---

[13] Dang already managed Tran's financial interest in the Venus Park and 11440 Memorial Drive properties. CR: 40-41 , Vol. 4, 1/15/14). Tran let his wife manage his financial interests in these jointly held properties, because he loved and trusted her. (Vol. 4, CR: 43)

15. Tran was asked to leave VNL during 2010 by Dang, who claimed that she had the authority to discharge Tran. Tran left VNL when Dang discharged him. In June 2010, Tran left Vietnam and returned to Texas, his home.

16. Tan Duc Construction made mortgage payments on the Memorial property until September 2010, at which time they discontinued payments, and the Memorial property foreclosure was posted in April 2011 (PX 17A), and a deed of foreclosure was executed in October 2011 (PX 11A, 15).

17. At trial, Dr. Kenneth Lehrer was called as an expert witness on economic damages, not as a real estate appraiser. He formed an opinion that Tran had suffered approximately $800,000 in damages related to the Memorial Property because of Dang's fraudulent conduct. He based his opinion on a number of facts in evidence, including, *inter alia*, the value of the property agreed to by Tran and Dang in their Prenuptial Agreement, which both Dang and Tran introduced, the foreclosure price as an indication of the debt against the house, in view of his knowledge and experience of banking foreclosure practices and other evidence discussed under Tran's Counterpoints, *infra*.

18. Tran and Dang were divorced in 2014 after a five week jury trial ending in a unanimous judgment of $650,000 for Tran's actual damages related to his interest in

12

the Memorial property proximately caused by Dang's fraud, and $50,000 in punitive damages.

## Dang's Appeal to Prejudice

The jury's finding that there were no fault grounds for divorce clearly reflect the Jurors' unanimous rejection of Dang's florid testimonial allegations, made from the defamation-immune zone of the witness stand, of adultery, embezzlement, gambling, incest, pedophilia, shoplifting, sloth, poor workmanship and traffic violations. Dang's regurgitation of these false allegations can only be an appeal to prejudice, since she presents no issues on appeal to which they could possibly be relevant. Dang does not challenge on appeal the Jury's finding that there were no fault grounds for divorce. These loathsome allegations should be stricken from this proceeding.

### (h) Argument

## ARGUMENT FOR APPELLEE'S COUNTERPOINTS 2[14] - 6:

> **Dr. Lehrer was not called as a real estate appraiser but as an expert on the economic damages Tran sustained because of Tran's conduct; he followed generally accepted methodologies of estimating such damages.**

---

[14] Counterpoint One is a numbering placekeeper for Appellant's placekeeper point I, and presents no argument because Appellant's point I presented no argument.

**Dr. Lehrer's opinion of economic damages was not an appraisal of Tran's former undivided 25% interest in the Memorial Property; the value of the Memorial Property that he used in his calculation of damages was taken from other, independent, evidence of value in the record, including, *inter alia*, the value agreed to in the parties' Prenuptial Agreement, documents introduced by Dang and other evidence of value.**

**Dr. Lehrer did in fact calculate the net value of Tran's 25% interest in the Memorial Property, using evidence in the record, including independently established value and the obligations against the property; his use of the undisputed foreclosure sale price was used as part of the evidence of the obligations against the property.**

**The appraisal techniques of using comparable sales and making appropriate adjustments are not applicable to Dr. Lehrer's opinion of damages since he did not testify as a real estate appraiser but as an expert on economic damages. However, the relevant values were established by independent evidence (See Appellee's Counterpoint No.3), and his opinion took into account sales data of comparable properties in the Memorial area of Houston.**

**Dr. Lehrer's opinion of damages (which was not an appraisal) properly used HCAD and other data to study trends of real estate values in the Memorial Area of Houston to determine if the damages factors should consider increases in value of property in that area; in any event, any incorrect application of this data was harmless because the amount of the jury's award is consistent with the values given in independent evidence without upward adjustment for HCAD and sales trend data described by Dr. Lehrer.**

To argue for reversal Appellant pretends that Tran called Dr. Lehrer for purposes he did not. To conceal in plain sight the ample independent evidence in the

record of the market value of the 11440 Memorial Drive project, Appellant must pretend that Lehrer's sole role was to create value evidence rather than to evaluate and interpret it. Moreover, Dr. Lehrer's opinion testimony regarding damages related to 11440 Memorial was reliable, because that testimony did comport with recognized methodologies for the preparation of opinions regarding actual economic damages related to a commercial transaction and beginning with reliable data obtained from reliable independent sources, notably instruments reciting, assigning and/or stipulating value and to which Appellant was signatory. Appellant's misphrasing of her arguments include the false premise that Dr. Lehrer's function was an appraisal function and that the question of damages for which Dr. Lehrer's opinion assisted the Jury was an appraisal question. Neither is true.

Dr. Lehrer calculated and testified to Tran's loss of economic beneficial interests arising from the prenuptial agreement. 13RR: 131. His supplemental report did address the real estate appraisal standards (13RR: 43) including actual sales of the subject properties (13RR: 127), the cost and income methods, and sales of comparable properties in Memorial (13RR: 129-130). "There are many homes being sold on a weekly basis in Piney Point (Memorial subdivision)" 13RR: 93. Dr. Lehrer did not do a formal real estate appraisal because it would be too expensive to do so

for the more than one hundred tracts of property and multiple years involved in the litigation. 13RR: 42.

He also relied on Harris County Central Appraisal District ("HCAD") government derived valuation data and mass computer analysis (13RR: 128). He testified that these sources and methods are reliable (13RR: 129, 198) and generally accepted and used by experts in his field (13RR: 46). Dr. Lehrer holds a Ph.D. in Urban Economics from the New York University.

He also relied heavily on the values agreed on by the parties to the lawsuit, who were respectively, a real estate developer (Dang), and former realtor and builder of the subject properties (Tran). Lehrer testified that "[t]he difference between the agreed value and the value at the time of the foreclosure shows gains or losses during the marriage "(t)o show if the person has more equity or value from (the) Prenup or less. There's no other way of determining it." 13RR:130-31.

One reason Dr. Lehrer used valuation trend data on the actual properties in dispute from the Harris County Central Appraisal District ("HCAD") was because Tan Duc failed to produce actual sales contracts on numerous properties. 13RR: 21. It was also appropriate and within the trial court's discretion to allow estimates based on such data where the court has ordered a party to produce actual real estate sales records and it has failed to do so. 13RR: 46.

16

Under TRE 703, it was appropriate for Dr. Lehrer to rely on the prenuptial agreement, others' appraisals, actual sales of the properties in dispute, HCAD and other governmental real estate documentation, banking and real estate documents, and online real estate databases that collect comparable sales information. 13RR: 44-47. These are the type of data that urban economists rely on in forming opinions and inferences. 13RR: 46.

Dr. Lehrer's opinion as to Tran's damages regarding the Memorial property was based on his research and calculations and was approximately $800,000. He also testified that Tran's share of the fair market value of Memorial at the time of the 2011 foreclosure was $625,000. 13RR: 104-05. Dr. Lehrer explained the definition of fair market value and that his damages opinion complied with the definition of fair market value. 13RR: 90. It was within the jury's province to decide whether the loss occurred at the time of the 2009 fraud, the 2010 fraud or at the 2011 foreclosure since that was a matter in dispute. Id.

Dr. Lehrer also testified as to economic beneficial interest increases Dang obtained as a result of her economically eliminating Tran's share of the Memorial property. 13RR:105-06. By transferring it to Tan Duc, a company there was evidence she controlled (9RR: 86-94), Dang's constructive interest went from 75% to 100%. 13RR: 106-07.

17

Dang's company US Southern originally owed the construction loan on Memorial. This was converted to a permanent mortgage to Countrywide/BOA owed solely by Tran. 13RR: 107. This shifting of debt to Tran from US Southern (which Dang owned and controlled independent from Tran) created economic benefits to Dang. 13RR: 108.

Dr. Lehrer did, also, consider debt Bank of America loaned on the Memorial home reflected in Respondent's Exhibit 84, which was used to estimate the value of Tran's interest of $831,000. 13RR: 119. Another alternative measure Lehrer testified to that the jury could have considered was to take Dang at her word to Tran that Dang's companies would pay off US Southern's development costs for Memorial (which had by then been converted into Countrywide mortgage debt against Tran's credit), and then simply multiply the declared Memorial 2011 foreclosure sale price of $2,620,000 by Tran's 25% interest to view his damages as $655,000. 13RR: 117-18. This provided "additional support" for Dr. Lehrer's calculation using HCAD data which came to $625,000 in 2011. 13RR: 118. This opinion of an alternative method for evaluating economic damages opinion depended on the assumption the Jury would agree Dang was bound by her promise to pay loans on properties in which Tran held beneficial interests.

Lehrer testified that his formulae were based on banking rules and regulations and federal banking authorities, and that based on his experience as a bank chairman, banks could not issue FDIC insured debt for more than 80% of the value of the collateral. This "gives the Court another method of valuation and support" for Dr. Lehrer's work. Id.

Dr. Lehrer also compared the 2007 and 2011 HCAD appraisal valuations to determine if an increase in value had occurred and he applied it to Jimmy Tran's interest. 13RR: 148. Dang misrepresented that her company US Southern would continue paying all the Memorial house bills. 6 RR: 73-75. Ms. Dang promised the bank and Mr. Tran that she would pay the mortgage and Mr. Tran "relied upon it." 13RR: 184-85. Dr. Lehrer testified that Ms. Dang, who was indisputably the only spouse who had control of the several entities easily capable of paying the debts on the jointly owned properties, "was supposed to protect the house" (13RR: 71), and if she had done so based on a 2013 approximate $4,000,000 value, she "would have made a good benefit of the bargain."

The HCAD value at the end of 2012 was $3,938,000. Increasing that by 20% due to the "lag" in HCAD values, and based on the opinion of a consulting expert Buddy Trotter who was then President of the Harris County Appraisal Society, led to Dr. Lehrer's opinion that the house was worth as a locus of damages between $4

and $4.5 Million in 2013. 13RR: 175. Dr. Lehrer also relied on a Houston Chronicle article that Piney Point (Memorial) properties had lately increased by 30 to 40 percent. 13RR: 176.

The bank foreclosed it in 2011 for $2,659,000 and resold it for approximately $3,325,000. 13RR: 245-46. The jury is entitled to consider subsequent transactions and trends as relevant as to the amount of the loss. 13RR: 194-95. Appellant's argument that compulsory bank foreclosure bids are fair market value ignores that foreclosing banks are compelled to buy if there are no better bids.

Dr. Lehrer testified that his overall report (regarding over one hundred properties) was based in part on the Prenup, and an important aspect of his Expert testimony was to help the Jury understand the capital structures the Prenup referenced and to analyze how different readings of Prenup language could produce different results.  Dr. Lehrer offered testimony to interpret how the Prenup "needs to work to make sense." 14 RR: 60.  For example, Dr. Lehrer explained to the Jury that unless the Prenup were interpreted to permanently fix Tran's starting percentage interests in entities and projects, then the Prenup's asset allocations would be illusory and have no value, because the controlling spouse (Dang) could by accounting expedients, for future debt service, new investment inflows, or carrying or development costs, unilaterally declare Tran's fractional interests "diluted to zero."

20

14RR: 65 and 87-89. The agreements between the spouses showing the same ownership percentages even after ongoing payment of debts supported this principle. 14RR: 65 and 79. The Prenup and subsequent instruments all showed Tran's ownership interest in 11440 Memorial Drive at 25%, despite Dang's ongoing payment of the mortgage. 22RR: 22 and 79. That was consistent with the spouses' fundamental agreement that he would build and she would fund their jointly held properties. 14RR: 68-69. A primary purpose of the Prenup was to stipulate values of their respective beneficial interests. 14RR: 65. The jury was certainly entitled to consider those repeatedly stipulated values as well as all the other data considered by an expert in the witness's demonstrated field of expertise.

Appellant is not entitled to relief under her point claiming Dr. Lehrer's testimony was incompetent for the question of Appellee's economic damages related to 11440 Memorial Drive. Dr. Lehrer's testimony is probative, competent evidence that supports the Jury's verdict on actual damages.

Appellant argues there was no evidence beside Dr. Lehrer's expert evidence to support the actual damage verdict:

> ...[T]here is certainly no evidence to support the $650,000
> in damages awarded to Tran for the loss of his interest in
> the 11440 Memorial property.

21

The claim is patently wrong. The Prenuptial Agreement, signed by two fee title owners of 11440 Memorial Drive, market valued 11440 Memorial Drive at $5.8 Million. Appellant herself introduced several pieces of documentary evidence bearing her signature and purportedly bearing Tran's signature, and these evidenced the market value of 11440 Memorial at $5 Million and $5.77 Million, respectively. [R-52, R-53, RR023, pdf pp.233ff.] Also in evidence is Countrywide's "LANDSAFE" third party appraisal setting the value at $4.8 Million. [P-124, RR022, at page 1063].

All this evidence usefully fits Appellant's own[15] theory for a proper measure for damages relating to 11440 Memorial. Appellant's Brief, beginning at page 55:

> ... Lehrer maintained that the property was worth $3.68 million on HCAD at the time Tran lost his interest. **Subtracting the $2.65 million in debt owed on the property, left around $1 million, of course, excluding other debts, taxes and costs for the property. Ignoring that there would be sales costs and discounts for the minority percentage as a tenant in common, Tran's 25% interest in the Memorial property could have been worth no more than $250,000** — although Dang contends that this record does not reflect any competent evidence of equity at all. It certainly cannot support, under any theory, the $650,000 in damages awarded by the jury....There is no competent basis for the jury to have awarded $650,000 as

---

[15] Tran does not endorse Dang's view that her damage-calculation formula is the sole proper method for assessing Tran's actual damage related to 11440 Memorial Drive. However, the use of Dang's own formula for calculating damages does produce answers that support the Jury's verdict based on unobjected-to evidence amply in the record. regarding the market value of 11440 Memorial, and this disposes of the appeal. Dang's brief wilfully distorts Tran's theory of the case by pretending to believe that Tran wanted to sort his damages into the narrowed categories in which they were submitted to the jury, and by then pretending to reverse-engineer the reason Tran must have called an expert to testify as if to fit narrowed damage definitions Tran did not prefer. Perhaps the Jury may have decided that Dang was more or less telling the truth when she told Tran his deeding his legal interest would not instantly change his "real" ownership through her oversight and protection as major domo over all his and her properties and interests, and then later changed her mind and decided to use the greater degree of control she had acquired when he parted with his legal interest by deed, to seize an interest she'd continued to conceive of herself as having once held beneficially for him. It was for the Jury, once they decided not to believe Dang, to decide from the evidence what Dang had actually been up to, and when it was she had got up to it, in terms of actually snapping shut the trap on her husband. The Jury was not charged to declare separately the precise date on which Tran suffered the actual damages the Jury found he had suffered, yet the date the damage occurred is a coordinate the Jury must likely have decided for itself when making its determinations. It is unreasonable for Dang now to suggest this Court must review damages as of only some single date or event extracted from the entire range of permissible conclusions that the jury may have reached from the expansive evidence.

23

damages. **Accordingly, the Court** reverse [sic], and certainly **could uphold no damages in excess of $250,000** even if Tran could show that somehow there was legally sufficient evidence to support this amount. [emphasis added]

Appellant advanced the same measure of damage in the charge conference. The following excerpt is from the charge discussions is at RR017, p 138, commencing at line 5:

MR. FLOWERS: And if we go into the component of: You take the fair market value, you subtract out the debt and the net equity, that's the damages.
THE COURT: Well, that's up to the jury to decide what it's going to be, but I'm just saying they've got to start with the value to get to the end.
MR. FLOWERS: That's right.

Using Appellant's Brief's formula, and the evidence Appellant seems unaware is in the record, the parties may, in fact, agree that the Jury could properly have awarded Tran the difference between the value of the property and "the $2.65 million in debt owed[16] on the property." Since the record includes evidence – apart from the expert testimony – that the property was valued, around the time Tran deeded away his

---

[16] This *ad arguendo*, since Tran also testified that Dang misrepresented to him that her company US Southern would continue paying all the Memorial house bills (mortgage too) as part of her overall promises to him in exchange for his compliance with, for instance, deeding legal title on demand to her, her family members or entities she controlled. (Vol. 6, CR: 73-75)

undivided fee interest, variously at $4.8 Million, $5 Million, $5.77 Million and $5.8[17]

Million, using Appellant's formula which includes "ignoring that there would be sales

costs and discounts[18] for the minority percentage as a tenant in common," produces

quarter-interest valuations as follows:

| evidenced value (in Millions of Dollars) | less stipulated[19] debt (in Millions of Dollars) | differential (in Millions of Dollars) | 25% of differential (in Dollars) |
|---|---|---|---|
| 5.77[20] | 2.65 | 3.12 | 780,000 |

[17] P-1, the Pre-nuptial agreement signed by the parties, described the market value of 11440 Memorial Drive as $5.8 Million Dollars.

[18] Appellee does not concede the accuracy of this statement, which in fact seems patently counterfactual. Owners of undivided fractional interests in fee title are tenants in common who by statute have an absolute right of Partition, including the absolute right to compel sale for Partition by the whole when necessary for division of the cotenancy. §23.001, Tex.Prop.Code. There thus would *not* be any"discount for a minority interest" in a partition by sale of the whole. Presumably in referring to discounts for fractional interests Appellant was thinking of non-fee-title situations where what a seller has to offer is merely a non-controlling minority fractional interest in a fictive entity, an interest lacking the power to compel liquidation. For purposes of this appeal, however, Appellee can take the assertion at face value for demonstrating there was more than adequate evidentiary support for the jury's actual damage award.

[19] Appellant's brief, page 11, erroneously conflates an equation using the $2.66 million foreclosure price with Dr. Lehrer's calculation of Tran's economic loss based on the agreed Prenup value, subsequent increases based on HCAD appraisals and comparable sales and consulting expert's input. The $55,000 difference in the different calculations' results makes plain the false comparison. The Jury was free to disregard the former.

[20] Exhibit R-53, contained in the clerk's pdf file RR023 at page 238

| 5.00[21] | 2.65 | 2.35 | 587,500 |
|---|---|---|---|
| 4.8[22] | 2.65 | 2.15 | 537,500 |

Perhaps Appellant will complain in a Reply Brief that none of these numbers is sufficiently precisely close to the Jury's calculation to stand review either under the question as it was submitted or[23] under the question however Appellant would now say (but, she doesn't say) she thinks it should have been presented. Where Appellant will err[24] in that argument is the considerable body of other financial data about the financial dealings of the spouses submitted into evidence, which places the Jury well

---

[21]Exhibit R-52, contained in this Court's record's pdf file named RR023 at page 233.

[22] Exhibit P-124, at page 1063 of the pdf file named RR022 in the clerk's electronic record on appeal

[23] The Texas Supreme Court has repeatedly stated that the sufficiency of the evidence will be measured against a defective jury charge—if it is not objected to. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (charge objected to and thus review was against proper legal standard); *Sturges*, 52 S.W.3d at 715 (review against charge in absence of objection); *Osterberg*, 12 S.W.3d at 55–56 (review against charge in absence of objection); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards); *MCN Energy Enters., Inc. v. Omagro De Colombia, LDC*, 98 S.W.3d 766, 771 (Tex. App.—Fort Worth 2003, pet. denied) (holding that without objection, instruction that defined misrepresentation as words or conduct did not limit evidentiary review to affirmative misrepresentations).

[24] The Jury was as free to ignore Dang's argument that the transfer of 11440 Memorial to Tan Duc relieved Tran of debt as they were to agree with Dr. Lehrer that relief from a Seven (7) figure obligation, whose only possibility of being repaid was by Appellant or her companies, was insufficient to compensate Tran for his damages. Tran had come into the marriage with $1 million of beneficial interests in properties, residential and commercial, developed with Dang directly and through her companies, and less than three years later, Dang had deprived him of all of it.

26

within their discretion in calculating damages from the all the evidence of the roiling marital enterprises. For only one example, the foreclosure "bid in" deed [Exhibit P-17A, found in this record at page 106 ff. of the pdf file the clerk labeled as RR022] recited the bid-in at $2.619 Million, not $2.65 Million. Correcting for this, but otherwise using Appellant's own formula, increases the three different figures each by $7,750. However, the Jury also received evidence that the amount due on the mortgages at the date Tran deeded out his interest (a **year** before the foreclosure date) (Tran's conveyance out of his interest was dated March 31, 2010; the Substitute Trustee's foreclosure deed was dated April 5, 2011) was not $2.65 or 2.619 Million, but, $2.27 Million Dollars [at page "3" of Exhibit R-53, found in this appellate record at page 240 of the pdf file named RR023, Eighth line in English from the top of the page]. Using that number, the deltas, again using the Appellant's Brief's own formula, calculate to:

| evidenced value (in Millions of Dollars) | less debt per R-53 (in Millions of Dollars) | differential (in Millions of Dollars) | 25% of differential (in Dollars) |
|---|---|---|---|
| 5.77 | 2.27 | 3.5 | 875,000 |
| 5.00 | 2.27 | 2.73 | 682,500 |
| 4.8 | 2.27 | 2.53 | 632,500 |

Appellant's claim that there was no evidence except expert evidence on the value of 11440 Memorial Drive is contradicted by the record.

Even if Appellant were correct that Lehrer's testimony were insufficient evidence *in se* to support the damages verdict, the abundant independent value evidence means the Judgment should be sustained because plugging that independent evidence into Appellant's own formula for calculating these damages supports the Jury's fraud actual damage amount of $650,000.00.

**ARGUMENT FOR APPELLEE'S COUNTERPOINT 7**:

> **The award of fraud damages to Tran was not contingent on any agreement between Tran and Dang regarding her interest in other businesses; rather, the damages were awarded on the basis of an independent cause of action that Tran pled, proved, submitted separately in Issue 9, and for which Tran obtained an affirmative jury verdict. To the extent that Appellant implies any conflict among questions, Appellant errs; there was no conflict, because the jury refused to find formation of the proffered agreement to which Appellate refers.**

Appellant claims that the fraud question was "contingent upon an agreement for interests in Tan Duc." That is a false premise, and a cunningly misleadingly phrased[25] one at that. If not a deliberate misconstruction of the record, Appellant has

---

[25] The Jury in Question 1 was asked to decide if the "parties reached an agreement," not whether Dang had made an offer she couldn't keep (at trial, Dang denied having had the power to bind Tan Duc) or couldn't be forced to keep (the Jury heard heated argument that the Prenup controlled all dealings of the spouses and explicitly forbad oral modifications). Tran's claim to

28

misunderstood her record. Based on this false premise, Appellant says this Court should discard as "immaterial" the Jury's damage verdict.[26] In fact, even were there a material conflict among answers, the "immateriality" doctrine would forbid its use for disregarding the verdict. *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). Appellee does not agree that the immateriality doctrine fits this case. But if it did, it could not be used as Appellant seeks.

The doctrine of immateriality is not often used. A standard definition for 'immaterial' in the context of jury charges is, "[a] jury question is considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict." *Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986); *C. & R. Transp., Inc. v. Campbell, infra*. The last detailed[27] discussion of the doctrine appears to have been *C & R Transport, id.*, in 1966, where Justice Calvert cited

---

have been deceived by a false offer of an agreement is not contingent on such a deception's having matured into an "agreement." What Appellant wants this Court to read instead of the word "agreement" is the word "offer."

[26] The jury charge does not appear formally in the record on appeal, though the copy attached to Appellant's brief bears the markings of a copy certified from the district clerk.

[27] The doctrine was discussed in passing by our Supreme Court in 1995 in an opinion, here not on point, in a jail suicide case, holding that a reviewing intermediate Court of Appeals erred by giving a new trial to the Plaintiff after an adverse jury verdict of no governmental employee wrongdoing merely because the jury charge also contained a spurious question about the suicide's own negligence. However, a close reading of the opinion suggests the true basis for decision was simply one of 'harmless error.' *City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995).

approvingly even older authority explicitly *forbidding*[28] application of the immateriality doctrine to reverse a judgment in *any* situation involving a[n asserted or real] conflict of answers within the verdict. *C&R Transport*, *id*.

If not "immateriality," then what is the crux of Appellant's complaint? Appellant argues in fact that the Jury's answer to Question 1 conflicts with the answer to Question 9.

To make the argument, Appellant strains to rewrite Tran's claim contrary to the record, and seems almost wilfully to read "agreement" as "proposal" or "promise." To do so, Appellant asks this Court to rewrite Question 9 to a single theory excerpted from Tran's counsel's opening statement on the first day of a Six Week trial. Worse, this contorted reading is directly contrary to a position Appellant took before the trial Court, in her  Motion for Judgment Non Obstante Veredicto. This is in the record, CR(1 of 1), commencing at page 69 as marked by the District Clerk, likewise found at pages 69-70 of the pdf file named CR(1 of 1) in the record.  In that motion, Appellant complained that Tran's testimony provided multiple explanations for his signing the deed conveying out his legal title in 11440 Memorial Drive to Tan Duc Construction Limited Company ["CLC"]. Appellant cannot now argue that the only

---

[28]  "A trial court thus has no authority because of other apparently conflicting jury findings to disregard a finding with legal significance which has support in the evidence." *C&R Transport*, *infra.*, at 194.

possible reason for Tran to have signed the deed was a promise he would receive an equal interest in the Tan Duc CLC investment vehicle. The jury was free to accept the other evidence Appellant concedes – complains even, in her trial Court Motion JNOV – that the Jury heard. Worse still, the Appellant's Brief (in this section) even quotes testimonial excerpts to the same effect.

Even if the only evidence the Jury heard regarding why Tran signed the deed conveying his interest in 11440 Memorial Drive to Tan Duc CLC was the testimony that Appellant promised him an interest in Tan Duc CLC, the jury could have answered "no" to Question 1 without impliedly finding that Tran was not defrauded, because Appellant's position at trial was that she had no authority to convey an interest in Tan Duc CLC because, she claimed, she did not own or control Tan Duc CLC. The Jury may have believed that Appellant had made a false promise she could never have kept by promising Tran something she could never deliver. Promissory fraud is fully actionable[29] in Texas. The Jury also heard that Tran received the promise[30] orally from Appellant, and may have believed that the promise could not form an agreement for that reason. Appellant argued as much at trial, when she was

---

[29] *Formosa Plastics Corp. USA v. Presidio Engineers*, 960 S.W.2d 41 (Tex.1998)

[30] The jury was free to consider as evidence of Dang's continuing intent to defraud Tran her deliberate choice to allow a foreclosure of 11440 Memorial despite her incontrovertible ability to continue paying the mortgage on it.

still afraid the Jury would order her to pay Tran 25% of the very considerable value of Tan Duc CLC.

Beyond all this, Appellant's implied view of the interplay of the common law of contract and of fraud is almost inexplicably, wilfully numb. Promissory fraud is fraud. *Formosa Plastics, id*. Appellant's comment that if Tran had gotten 25% of Tan Duc CLC he would not have been able to claim he was defrauded is beside the point, since the record makes clear Tran didn't get 25% of Tan Duc – or of anything else.

Tran pled an independent cause of action for common law fraud in his Second Supplement to his Fifth Amended Original Petition as follows:

> 3. Fraud
> Based on the foregoing, Petitioner also asserts claims for common law and statutory fraud involving real estate and breach of fiduciary duty. All Respondents knowingly participated in the fraud and breach of fiduciary duty.

Tran submitted evidence in support of his fraud claims which was submitted to jury as Question 9. The jury answered "yes." to Question 9. The Jury awarded damages in the amount of $650,000, and Tran recovered the judgment now before this Court. The record clearly reflects the pleading, proof and verdict on Tran's separate and distinct cause of action for fraud against Dang.

The Texas Supreme Court has defined a cause of action for common law fraud in *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) as follows:

32

The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

See also *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001), *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App.- Houston [14th Dist.] 2007, no pet.)

The fraud-existence issue that Dang requested the Court to submit (a 'pure' PJC form submission) which the Court did submit was not conditioned on the existence of a contract between Dang and Tran, and the elements of fraud in the accompanying instruction followed those enumerated in *In re FirstMerit Bank, N.A., supra.*, at 385. Tran's theory was that he relied on untrue statements made by Dang, and on Dang's fraudulent failure to disclose material facts, which caused him to convey his record fee legal title in the Memorial residence to an entity which she controlled and thereby lost the rights, *inter alia* to compel a partition by the whole, inherent in the status of holding fee legal title interest and subsequently (if that were not a loss yet) indeed lost even residual equitable claims against the title upon the event of an unrelated, independent substitute trustee's foreclosure deed into a genuine independent third party fee holder. The record before this Court clearly shows the

33

pleading, proof, and jury verdict in Tran's favor on a classic common law fraud claim. There is no way that the jury's fraud verdict is "immaterial" and the judgment should stand.

**ARGUMENT ON APPELLEE'S COUNTERPOINT 8:**

> **The District Court instructed the jury on the damage issue in the Charge of the Court; to the extent that there may have been any error, it was waived intentionally or not properly preserved and in any event was harmless.**

Appellant's alleged charge instruction error point rests on the false premises (1) that the fraud actual damage question submitted to the jury exactly tracked the language of PJC 115.19, and (2) that no instructions whatsoever were given. In fact, the Charge does include instructions that sharply narrowed and limited the scope of the jury's damage-finding assignment, and PJC 115.19 was not tracked. The trial Court chose to place all her charge instructions together at the beginning of her Charge, before any questions. Nor did the damage question submitted materially track PJC115.19.

Appellant does not appeal the submission of the fraud-existence question, nor does she appeal its form.

Predicated on an affirmative answer to the fraud-existence question, the Charge then instructed the Jury to answer a separate question (Question 12A) whether the fraud proximately caused damages to Tran.

The record of the Charge conference suggests that the inclusion of a proximate cause qualifier for fraud damages may have been a typographic[31] error by the person [Appellant's counsel Todd Frankfort] who was assisting the Court's clerk as a typist for preparation of the final version of the proposed charge. Regardless of the reason why the Jury was charged not to award fraud damages unless they were substantially and necessarily[32] caused by fraud and were foreseeable to the tortfeasor, the Court's charge did provide the standard definition:

> "Proximate Cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission mut be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event."

Then, to further guide the Jurors, the trial Court instructed them:

---

[31] The event is reflected in the record of the charge conference, RR023, Page 51, Line 18ff, where Mr. Frankfort proposes to *add* proximate causation language to the portion of the damages question intended to be triggered by an affirmative finding of breach of fiduciary duty.

[32] i.e., "but for"

"Property" means an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings.

The value of an asset is its fair market value unless it has no fair market value.

"Fair market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

If an asset has no fair market value, its value is the value of its current ownership as determined from the evidence.

In valuing an asset to be received in the future, you are to find its present value as determined from the evidence.

Then, to further guide the Jurors, the Court instructed the Jurors only to award damages limited by all the above factors if those damages also "related to" 11440 Memorial Drive. In short, the trial Court did narrow and limit the range of considerations the jury was instructed to use when forming their answer to the damage question. In contrast, the straight PJC 115.19 fraud damage question would have asked the Jury only to award a dollar amount for damage that "resulted from" fraud. This is the Pattern Jury Charge form to which Appellant's Brief refers. It is not what went to the Jury. References to the form's calling for use of instructions to narrow the focus from "resulted from" do not apply to this Charge, which did not instruct the Jury to determine damages that "resulted from" fraud. This Jury was instructed to determine damages that were "proximately caused" by fraud. Proximate

36

causation is a narrowing instruction, and went to the Jury along with all the other instructions ("value," "fair market value," value for "asset to be received in future," etc.) This Jury was also instructed to award only damages "related" to 11440 Memorial. The Jury's answer to the damage question was well within the parameters of these instructions.

By arguing in response to this complaint, Appellee does not concede that he was obliged to do so. Appellee does not concede that this point was preserved. Appellee submits the point was intentionally waived. Nor does Appellee concede, if Appellant is suggesting, that it would have been fundamental error even if the Charge said what Appellant says it said. Appellant calls its alleged instruction deficit a "fatal defect," which is not, so far as Appellee knows, a term of art for unwaiveable error.

Regarding error preservation and waiver, the trial Court entertained bench discussions with counsel regarding matters concerning the forthcoming Charge at length, over multiple days, before tendering to Counsel the Court's proposed Charge and conducting a standard "charge conference," which is in the record. The Court went through her proposed Jury Charge in order from front to back. When the Court got to the damage question whose form Appellant now challenges, the trial Court specifically asked Appellant if she had any objections to the form of the question, and Appellant demurred and stood silent. The following excerpt is from the reporter's

37

record of the charge conference, and it contains no ellipses. It commences at RR Vol 18 P51 L 14. The context of the excerpt demonstrates that the Court and counsel were discussing Question 13.

> MR. FRANKFORT: Next is the damage question.
> THE COURT: All right. And we need to add "gift." I've got that.
> MR. FRANKFORT: We need to add "gift." What Mr. Muller and I discussed before the Court came out was modifying the language that's contained in here on this page to say: What sum of money, if any, paid now in cash, would fairly and reasonably compensate Jimmy Tran for his damages, if any, that resulted from the conduct of Ms. Dang? And then add another paragraph to say: If you answered yes to question whatever relating to fiduciary duty, you must find that such damages were proximally caused by Ms. Dang and then again insert the definition of proximate cause contained in pattern jury charge 100.12.
> THE COURT: Okay.
> MR. FLOWERS: <u>Your Honor, we object to this damage question in that there's been no showing of a damage to Mr. Tran</u>. The evidence in this case has been that none of these properties had any value whatsoever based on the competent evidence that has been disclosed to us prior to trial and not on the evidence that was constructed and made up at trial, that the evidence that was presented was not sufficient and should never have been admitted. I further object that the fraud finding and the fiduciary duty question, that there's no -- there's no basis. It is perfectly possible for a person to breach a fiduciary duty but not cause damage. And there's a -- there can be a finding of a breach of fiduciary duty, but there's no tie-in to the damages at all.
> THE COURT: <u>Anything else, Counsel</u>? I've got it.

It is not fair to the trial Court or to Appellee for Dang now to complain that something is missing from Question 13 when her counsel passed up the direct invitation to say so during the charge conference. Appellant enjoyed capable trial

38

counsel, and there were sound tactical reasons for that counsel to stand silent on the issue when the question was posed to him in the charge conference.

Finally, if *arguendo* the form of Question 13 were error, it was harmless here. Appellant's own formula produces answers in the same range as the Jury's award, using precisely the formula for calculating those damages advanced by Appellant both in her Brief to this Court, and in her arguments to the trial Court.

The Judgment should be sustained.

**(i)**  ***Conclusion***

The Jury spent five weeks with Ms. Dang and unanimously they did not believe her testimony. Appellant waived the alleged charge error, which was anyway harmless. Appellee did not make his fraud claim contingent on a Jury finding that an enforceable agreement had formed between him and his then-wife regarding his receiving an interest in Tan Duc. The expert economist did not submit improper evidence requiring reversal because he testified as a damages expert regarding an overall series of commercial transactions, not as the appraiser Appellant claims. The expert's damages opinions related to 11440 Memorial Drive started with data points independent of his own testimony, including valuations in multiple pieces of documentary evidence signed and offered into evidence by the Appellant herself. The Jury and trial Court worked hard and reached a fair enough result after a lengthy

proceeding.  The product of their hard work, a fair enough[33]  Judgment, should be

Affirmed.

---

[33] "Fair enough,"  because Tran has elected to accept the present Judgment if it be his to accept even though he complained in the trial Court for seven months before trial that his new counsel were being denied the leave freely to amend his pleadings promised by the Rules of Civil Procedure, that inflammatory uncorroborated testimony was permitted, that his damages evidence was restricted, that *de facto* spoliation had occurred, that Tan Duc's counsel's prior representation of US Southern Corporation in transactions with Metro Bank involving the foreclosure from Tan Duc and rapid reacquisition (at par!) by US Southern of the Venus Park properties should not have been concealed from the Jury as relevant to breach of fiduciary duty and other claims, that fraudulent inducement of the prenuptial agreement should have at least been placed before the Jury because of Dang's expert's testimony, among his complaints of error tending sharply to diminish his remedies and damages in a hard-fought divorce trial not lacking for emotion and lasting five-plus weeks. Even on his pleading the trial Court deemed live, Tran's *ad damnum* exceeded the Jury's award by an order of magnitude, not because the *ad damnum* was irrationally large, but because the Jury award was reduced by an order of magnitude when the Jury grew confused about their ability to remedy the title-washing exercise of the foreclosure-reacquisition exchange in which title to the Venus Park properties shifted without material consideration from Tan Duc to US Southern Corporation.  At trial, Tran fairly argued for a much larger verdict and Judgment than he received, and he deems the extant Judgment "fair enough" at this juncture only because of the hard realities of foreign collections practice (the Venus Park properties were being liquidated during the trial) and because it is some compensation, for much greater losses, if proceedings were thus drawn to a close.

**(j)    *Prayer***

Appellee prays that the Court sustain the trial court's judgment, but if – and only if – this Honorable Court were to decide to grant any relief to Appellant, then to consider and grant Cross Appellant's points of error as to Dang (to be presented separately in a later Brief pursuant to this Court's recent scheduling order).

Respectfully submitted,
   /S/    Matt Muller
Matthew S. Muller
Texas Bar No. 14648450
1445 North Loop West, Suite 760
Houston, Texas  77008
Tel. (713)227-1888
Fax. (713)227-1881
*Attorney for Tran*

**(k)** *Certificate under T.R.A.P. 9.4(i)(3):* By signing this Brief, and filing it via the Texas Online portal, Appellee's counsel certifies pursuant to T.R.A.P. 9.4(i)(3) that the word processor software used to prepare this Brief (Word Perfect x6) reports the word count of this Brief is 9948 words, inclusive of everything.

  /S/   Matt Muller   
Matthew S. Muller

**(l)** <u>**Certificate of Service**</u>

I will cause the e-filing system by instructing my vendor "Filetime" to serve a true copy of this instrument on all counsel this 20th day of October, 2015 being Mr. Daughtry and Ms. Douglass.

/S/    Matt Muller

Matthew Muller

**(m)    *Index to Appendix.***

1.     Exhibit R52

2.     Exhibit R53

3.     Courtesy copy of appellee's counsel's working index to exhibits in

reporter's record

4.     PX-19A (Tracing of Memorial transactions)

C:\Users\Home\Dropbox\TRAN Appellate\Brief 9.wpd

# APPENDIX

# Exhibit R-52

## TAN DUC CONSTRUCTION LIMITED COMPANY

Address: Lot 10, Duc Hoa Ha Road, Tan Duc Industrial Park, Duc Hoa District, Long An Province.

Telephone (*Điện thoại*): 072 3769739

Business Registration Certificate No. (*ĐKKD số*): 1100720733

# LOAN AGREEMENT
## *HỢP ĐỒNG VAY VỐN*

Agreement No.1511/HĐTD- 2008
*Số HĐ: 1511/HĐTD-2008*

Long An, November 15, 2008
*Long An, Ngày 15 tháng 11 năm 2008*

Today, November 15, 2008, at the Office of Tan Duc Construction Company Limited, the parties including:

*Hôm nay, ngày 15/11/2008, tại VP Công ty TNHH Xây dựng Tân Đức , các bên gồm:*

**Party A (The Borrower): Including the two persons below:**
*Bên A (Bên vay): Gồm hai cá nhân dưới đây:*

1. **Mr. Jimmy Tran**
   *Ông Jimmy Trần*
   - Nationality (*Quốc tịch*): American (*Hoa Kỳ*)
   - Address in the United States (*Địa chỉ tại Hoa Kỳ*): 11440 Memorial Dr., Houston, Texas 77024, USA
   - Address in Vietnam: 89/15 Tran Nao, District 2, Binh An Ward, Ho Chi Minh City, Vietnam
   *Địa chỉ tại Việt Nam : 89/15 Trần Não Quận 2, Phường Bình An, TP. HCM, Việt Nam*

2. **and Ms. Dang Thi Hoang Yen**
   *và Bà Đặng Thị Hoàng Yến*
   - Telephone (*Điện thoại*): +84 094996.8698
   - Nationality (*Quốc tịch*): American (*Hoa Kỳ*)
   - Address in the United States (*Địa chỉ tại Hoa Kỳ*): 11440 Memorial Dr., Houston, Texas 77024, USA
   - Address : 89/15 Tran Nao, District 2, Binh An Ward, Ho Chi Minh City, Vietnam
   *Địa chỉ tại Việt Nam : 89/15 Trần Não Quận 2, Phường Bình An, TP. HCM, Việt Nam*
   - Telephone (*Điện thoại*): +8491392.8804

**Party B (The Lender) Tan Duc Construction Investment Company Limited**
*Bên B (Bên cho vay) Công Ty TNHH Đầu Tư Xây Dựng Tân Đức*
- Address: Lot 10, Duc Hoa Ha Road, Tan Duc Industrial Park, Duc Hoa District, Long An Province.

1/4

10th Supp RRFP Dang 000139

*Địa chỉ: Lô 10, Đường Đức Hòa Hạ, khu CN Tân Đức , Huyện Đức Hòa, Tỉnh Long An.*

- Telephone (*Điện thoại*): 072 3769739

- Business Registration Certificate No. (*ĐKKD số*): 1100720733

  Issued by (*Nơi cấp*): Department of Planning and Investment of Long An Province (*Sở kế hoạch đầu tư tỉnh Long An*)

- Representative:     Ms. Dinh Thi My Dung    Position: Managing Director

  *Người đại diện:    Bà Đinh Thị Mỹ Dung        Chức vụ : Giám Đốc điều hành*

- ID No. (CMND số): *022420592*    Issued by (*Nơi cấp*): HCM City Police Department (*CA TP.HCM*)
  Date of issue (*Ngày cấp*): June 20, 2002

**The two parties have agreed to enter into the loan agreement with the following terms:**

*Hai bên thỏa thuận ký Hợp đồng tín dụng theo các điều khoản sau:*

**Article 1. As Party A 's request, Party B agrees to provide the loan to Party A as follows:**

*Điều 1. Theo đề nghị của Bên A, Bên B đồng ý cho Bên A vay như sau:*

1. Loan amount: US$ 2,000,000 (Said: two million US dollars)

   *Số tiền cho vay: 2.000.000USD (Bằng chữ: hai triệu đô la chẵn)*

2. Purpose of the loan: **Payments for the mortgage for the Memorial Home located at 11440 Memorial Dr., Houston, Texas 77024, USA. Hereby is as known as Memorial Home.**

   *Mục đích vay: Để Bên A trả gốc và lãi ngân hàngBank of America, N.A cho khoản vay của nhà Memorial tại 11440 Memorial Dr., Houston, Texas 77024, USA. Trong hợp đồng sau được gọi là 'nhà Memorial'.*

3. Borrowing method: **Mortgage for the Memorial house**

   *Phương thức vay: Thế chấp bằng căn nhà*

4. Disbursement method: in Cash and/or Bank transfer from the accounts of Vietnam Land Company to the accounts in United States of America assigned by Jimmy Tran and Dang Thi Hoang Yen.

   *Phương thức giải ngân: Tiền mặt và/hoặcChuyển khoản từ Công ty Vietnam Land đến tài khoản tại Hoa Kỳ theo chỉ định của Ông Jimmy Tran và Bà Đặng Thị Hoàng Yến.*

5. Loan Period: 12 months from the first disbursement

   *Thời hạn vay: 12 tháng, kể từ ngày giải ngân đầu tiên.*

6. Interest rate

   *Lãi suất vay (LSV):*

   a) Interest rate: **9.00% per annum (360 days)** for the loan period from the first disbursement.

   *Lãi suất: 9.00 %/năm (360 ngày) được áp dụng trong thời gian vay kể từ ngày giải ngân lần đầu tiên.*

**Article 2. Interest payment method**

*Điều 2. Phương thức trả lãi vay*

1. Interest payment period:  Payment at the end of period, after 12 months from the first disbursement

10th Supp RRFP Dang 000140

*Kỳ hạn trả lãi vay: Cuối kỳ trả gốc, Sau 12 tháng tính từ ngày giải ngân đầu tiên.*

2. Interest amount = (Outstanding loan x Interest rate x Actual number of borrowing days)/360

   *Tiền lãi phải trả = (Dư nợ vay x LSV x Số ngày vay thực tế)/360*

## Article 3. Principal payment method
*Điều 3. Phương thức trả nợ gốc*

1. Party B borrows in US dollars and shall pay off the principal and interest in US dollars. The payment of principal and interest in foreign currency shall be made in accordance with the foreign exchange management regulations of the Vietnamese State Bank.

   *Bên B vay bằng USD và sẽ phải trả nợ gốc, lãi vay bằng USD. Tỷ giá đổi ngoại tệ sẽ thực hiện theo qui định về quản lý ngoại hối của Ngân hàng Nhà nước Việt Nam tại thời điểm thanh toán.*

2. If the date of payment of principal and interest is Party A's day-off, the principal and interest shall be paid on the subsequent day.

   *Nếu ngày trả nợ gốc, lãi vay là ngày nghỉ của Bên A thì ngày làm việc kế tiếp sẽ là ngày trả nợ gốc, lãi vay.*

## Article 4. Collateral
*Điều 4. Tài sản thế chấp.*

1. Party A uses the residential house at 11440 Memorial Dr., Houston, Texas 77024 as collateral for the loan.

   *Bên A đồng ý dùng tài sản là căn nhà tại: 11440 Memorial Dr., Houston, Texas 77024 để thế chấp cho khoản vay này.*

2. The house's value: USD 5, 000,000 (Five million US dollars) as collateral for the loan from Party B.

   *Trị giá căn nhà : 5.000.000USD (Năm triệu USD) Dùng để thế chấp vay vốn của bên B.*

## Article 5. General provisions
*Điều 5. Điều khoản chung*

1. If Party A wants to sell the Memorial house, Party B shall have the first priority to buy the house.

   *Trong trường hợp Bên A muốn bán căn nhà Memorial thì bên B được quyền ưu tiên đầu tiên để mua căn nhà này.*

2. The amendment or addition of provisions of this agreement shall be made in writing with signatures of the both parties for its validity.

   *Việc sửa đổi, bổ sung các điều khoản của hợp đồng này phải được lập thành văn bản và được hai bên thống nhất ký kết mới có giá trị.*

3. Any dispute arisen upon performance of this agreement shall be settled by means of negotiation and equality between the two parties. If the parties fail to negotiate a settlement, the dispute shall be settled by a competent court in Vietnam or the United States selected by Party B.

   *Mọi tranh chấp phát sinh trong quá trình thực hiện hợp đồng này được giải quyết trên cơ sở thương lượng, bình đẳng giữa hai bên. Trường hợp không tự thương lượng được thì các bên có quyền đưa ra toà án tại Việt Nam hoặc Hoa Kỳ do Bên B lựa chọn để giải quyết.*

4. This agreement shall take effect from the date of signing until Party A has paid off the debts to Party B.

   *Hợp đồng này có hiệu lực kể từ ngày ký cho đến khi Bên A hoàn thành các nghĩa vụ trả nợ đối với Bên B.*

10th Supp RRFP Dang 000141

5. This agreement shall made in 03 copies with equal validity, Party A keeps 02 copies, Party B keeps 01 copy.

*Hợp đồng này được lập thành 03 bản có giá trị pháp lý như nhau, Bên A giữ 02 bản, Bên B giữ 01 bản.*

| PARTY B 'S REPRESENTATIVE | PARTY A 'S REPRESENTATIVE |
|---|---|
| *ĐẠI DIỆN BÊN B* | *ĐẠI DIỆN BÊN A* |
| *(Signature, full name, seal)* | *(Signature, full name)* |
| *(Ký tên, ghi rõ họ tên, đóng dấu)* | *(Ký tên, ghi rõ họ tên)* |

| **My-Dung Thi Dinh** | **Jimmy Tran** | **Hoang-Yen Thi Dang** |
|---|---|---|
| Dated: 15/11/2008 | Dated: 15/11/2008 | Dated: 15/11/2008 |

4/4

10th Supp RRFP Dang 000142

# WITNESS STATEMENT FORM
## ĐƠN XÁC NHẬN CỦA NHÂN CHỨNG

NAME: _____ _LAI THI NGUYEN_ _____

HỌ, TÊN: _____ _Nguyễn Thị Lài_ _____

IDENTIFICATION: _____ _021121196419_ _____

CHỨNG MINH NHÂN DÂN _____ _021121196419_ _____

**LOCATION:** Address: Lot 10, Duc Hoa Ha Road, Tan Duc Industrial Park, Duc Hoa District, Long An Province.

*ĐỊA ĐIỂM: Địa chỉ: Lô 10, Đường Đức Hòa Hạ, Khu Công nghiệp Tân Đức, Huyện Đức Hòa, Tỉnh Long An*

**STATEMENT:**

*XÁC NHẬN:*

I, _Lai Thi Nguyen_ , witness under law that Mr. Jimmy Tran and Madam Dang Thi Hoang Yen signed this agreement in front of me.

*Tôi, Nguyễn Thị Lài , xin làm chứng theo pháp luật rằng Ông Jimmy Trần và Bà Đặng Thị Hoàng Yến đã ký hợp đồng này trước mặt tôi.*

I understand this statement will be considered part of the official investigation and that I may be called on to testify or provide written or verbal clarifying statements. The statement I have provided is an accurate account of the case to the best of my knowledge.

*Tôi hiểu rằng xác nhận này sẽ là một phần của cuộc điều tra chính thức và rằng tôi có thể được yêu cầu chứng thực hoặc cung cấp các xác nhận làm rõ bằng văn bản hoặc bằng lời nói. Bản xác nhận tôi đã cung cấp là một bản tường trình chính xác của vụ việc theo sự hiểu biết chính xác nhất của tôi.*

Signature by: Mrs. LAI THI NGUYEN

*Ký bởi bà Nguyễn Thị Lài*

Date November - 15 - 2008

*Ngày ký 15 - 11 - 2008*

10th Supp RRFP Dang 000143

# Exhibit R-53



EXHIBIT
R-53

# TAN DUC CONSTRUCTION LIMITED COMPANY

Address: Lot 10, Duc Hoa Ha Road, Tan Duc Industrial Park, Duc Hoa
District, Long An Province.

Telephone (*Điện thoại*): 072 3769739

Business Registration Certificate No. (*ĐKKD số*): 1100720733

---

## SETTLING AGREEMENT FOR THE LOAN AGREEMENT NO. 1511/HDTD-2008 SIGNED ON 15/11/2008
### *THỎA THUẬN GIẢI QUYẾT HỢP ĐỒNG VAY VỐN SỐ 1511/HĐTD-2008*

Long An, April 15, 2010
*Long an, ngày 15 tháng 04 năm 2010*

Today, April 15, 2010, at the Office of Tan Duc Construction Limited Company, the parties including:

*Hôm nay, ngày 15/4/2010, tại VP Công ty TNHH Xây dựng Tân Đức , các bên gồm:*

Party A (The Borrowers): Including two persons below:

*Bên A (Bên vay): Gồm hai cá nhân dưới đây:*

1. Mr. Jimmy Tran
   *Ông Jimmy Trần*
   - Nationality (*Quốc tịch*): American (*Hoa Kỳ*)
   - Address in the United States (*Địa chỉ tại Hoa Kỳ*): 11440 Memorial Dr., Houston, Texas 77024, USA
   - Address in Vietnam: 89/15 Tran Nao, District 2, Binh An Ward, Ho Chi Minh City, Vietnam
   - *Địa chỉ tại Việt Nam: 89/15 Trần Não Quận 2, Phường Bình An, TP. HCM Việt Nam*

2. and Ms. Dang Thi Hoang Yen
   *và Bà Đặng Thị Hoàng Yến*
   - Telephone (*Điện thoại*): +84 094996 8698
   - Nationality (*Quốc tịch*): American (*Hoa Kỳ*)
   - Address in the United States (*Địa chỉ tại Hoa Kỳ*): 11440 Memorial Dr., Houston, Texas 77024, USA
   - Address in Vietnam: 89/15 Tran Nao, District 2, Binh An Ward, Ho Chi Minh City, Vietnam
   - *Địa chỉ tại Việt Nam: 89/15 Trần Não Quận 2, Phường Bình An, TP. HCM, Việt Nam*
   - Telephone (*Điện thoại*): +84 91392 8804

Party B (The Lender) Tan Duc Construction Investment Company Limited

1

10th Supp RRFP Dang 000144

*Bên B (Bên cho vay) Công Ty TNHH Đầu Tư Xây Dựng Tân Đức*

- Address: Lot 10, Duc Hoa Ha Road, Tan Duc Industrial Park, Duc Hoa District, Long An Province.

  *Địa chỉ: Lô 10, Đường Đức Hòa Hạ, Khu Cong nghiep Tân Đức, Huyện Đức Hòa, Tỉnh Long An.*

- Telephone (*Điện thoai*): 072 3769739

- Business Registration Certificate No. (*ĐKKD số*): 1100720733

  Issued by (*Nơi cấp*): Department of Planning and Investment of Long An Province (*Sở kế hoạch đầu tư tỉnh Long An*)

- Representative (*Người đại diện*): Ms. (*Bà*): Đinh Thị Mỹ Dung

  Position (*Chức vụ*): Managing Director (*Giám Đốc điều hành*)

  ID No. (*CMND số*):022420592 - Issued by (*Nơi cấp*): HCM City Police Department (*C.A. TP. HCM*) - Date of issue (*Ngày*): June 20, 2002 (*20/6/2002*)

At the request of Party A, the two parties have agreed as follows:
*Theo đề nghị của Bên A, hai bên cùng thỏa thuận:*

**Article 1.** Mr. Jimmy Tran suggests that he and Madam Dang Thi Hoang Yen want to sell the house at 11440 Memorial Dr., Houston, Texas 77024, USA.

*Điều 1.       Ông Jimmy Trần trình bày hiện nay ông Jimmy Tran và bà Đặng Thị Hoàng Yến mong muốn bán căn nhà tọa lạc tại 11440 Memorial Dr., Houston, Texas 77024, USA.*

**Article 2.** Ms. Dinh Thi My Dung, representative of Tan Duc Construction Company Limited, has obtained approval of the Board of Directors of the Company according to the Resolution No. 104/THHHTD-2010 to represent the Company to buy the house at 11440 Memorial Dr., Houston, Texas77024, USA in order to offset and pay off the debt under the contract 11411/HDTD-2008 signed on November 15, 2008 as requested by Mr. Jimmy Tran.

*Điều 2       .Bà Đinh Thị Mỹ Dung -- đại diện cho Công ty TNHH Xây dựng Tân Đức đã được sự nhất trí của Hội đồng thành viên trong Nghị quyết số104 /THHHTD-2010, đồng ý cho phép bà Đinh Thị Mỹ Dung đại diện công ty thực hiện việc mua lại căn nhà tọa lạc tại 11440 Memorial Dr., Houston, Texas 77024, USA để cấn trừ công nợ của hợp đồng 11511/HDTD-2008 mà các bên đã ký ngày 15/11/2008 theo như đề nghị của ông Jimmy Trần.*

**Article 3. Purchase provisions**

*Điều 3. Thỏa thuận điều khoản mua bán:*

3.1.  Party A requests Party B to buy the house as described in the attached Exhibit 1 and Exhibit 2.

  *Bên A đề nghị Bên B đồng ý mua lại căn nhà được miêu tả tại Exhibit 1 và Exhibit 2 đính kèm.*

2

10th Supp RRFP Dang 000145

3.2 Party B agrees with the purchase price as follows: Party A agrees to sell the house as stated in Article 1 to Party B at the price of US$ 5,770,000, including:

*Giá cả Bên B đồng ý mua lại như sau: Bên A đồng ý bán và Bên B đồng ý mua căn nhà nêu tại Điều 1 với giá: 5.770.000 đô la Mỹ, trong đó:*

(i)- The payment shall be made in cash to offset the principal and interest of Party A 's loan under the contract 1511/HDTD-2008 dated November 15, 2008, the entire amount of principal and interest arises until April 15, 2010 as follows:

*Trả bằng tiền mặt được cấn trừ vào tiền vốn gốc và trả lãi mà Bên A đã vay tại Hợp đồng 1511/HDTD-2008 ký ngày 15/11/2008 toàn bộ nợ gốc và lãi phát sinh đến ngày 15/4/2010 như sau:*

- Principal (*Nợ gốc*): US$ 2,000,000.00

- Interest payment (*Trả lãi*): US$ 2,000,000 x 18/12 x 9.0% = US$ 270,000.00

- Total of principal and interest offset against the house purchase amount (*Tổng cộng vốn gốc và lãi cấn trừ vào tiền mua nhà là*): US$ 2,270,000.00

(ii)- Party B agrees to offset and to pay off the amount of US$ 500,000.00 which Mr. Jimmy Tran withdrew and borrowed for his personal purpose from the Vietnam Land Corporation in 2009 and the first Quarter of 2010.

*Bên B đồng ý cấn trừ khoản tiền US$ 500.000,00 mà ông Jimmy Trần đã rút tiền phục vụ cho nhu cầu cá nhân của ông từ công ty Vietnam Land trong năm 2009 và Quý 1năm 2010.*

(iii)- Mr. Jimmy Tran is committed to continuing to be the beneficiary of the loan of US$ 3,000,000.00 from the Bank of America

*Ông Jimmy Trần cam kết sẽ tiếp tục chịu trách nhiệm đứng tên khoản vay của Bank of America US$ 3.000.000,00.*

3.4. Party B shall only agrees to buy the house in the condition that Mr. Jimmy Tran is committed to continuing to be the beneficiary of the loan from the Bank of America, but Party B shall be responsible to pay monthly interest from April 15, 2010.

*Bên B chỉ đồng ý mua lại căn nhà với điều kiện ông Jimmy Trần cam kết sẽ tiếp tục đứng tên khoản vay của Bank of America, N.A và Bên B đồng ý hàng tháng sẽ chịu trách nhiệm trả lãi kể từ ngày 15/4/2010.*

## Article 4: Other commitments
*Điều 4: Cam kết khác*

4.1. In ten days after signing of this Agreement, Mr. Jimmy Tran and Ms. Dang Thi Hoang Yen shall ensure completion of transfer of the Memorial house ownership to Tan Duc Construction Company Limited.

*Trong vòng 10 ngày ke tuw ngay ký thoa thuan nay, ông Jimmy Trần và bà Đặng Thị Hoàng Yến phải đảm bảo hoàn thành ký chuyển sở hữu căn nhà memorial cho Công ty TNHH xây dựng Tân Đức.*

4.2. Mr. Jimmy Tran who is the Party A's representative, shall be responsible to give a monthly notice of principal and interest payment issued by the Bank of America to

3

10th Supp RRFP Dang 000146

Party B for making payment. In case Mr. Jimmy Tran provides such notice 7 days prior to the due date of the payment, Party A shall be responsible to pay the principal and interest to the bank and then shall be refunded by Party B within 7 days from the date of Party A showing the proof of the payment to the bank.

*Hàng tháng ông Jimmy Trần, đại diện Bên A, có trách nhiệm cung cấp giấy báo trả gốc và lãi của Bank of America để Bên B thanh toán. Trong trường hợp ông Jimmy Trần cung cấp giấy báo của ngân hàng chỉ trước thời hạn phải trả 7 ngày thì Bên A có trách nhiệm phải thanh toán tiền vốn và lãi cho ngân hàng, sau đó sẽ được Bên B hoàn trả lại trong vòng 7 ngày kể từ khi Bên A cung cấp bằng chứng Bên A đã thanh toán cho ngân hàng.*

4.3    In case Party A fails to pay the principal and interest to the bank, Party A shall be responsible to compensate Party B for all damages arising out of the delay in payment.

*Trong trường hợp Bên A không thanh toán nghĩa vụ trả vốn gốc và lãi cho ngân hàng thì sẽ phải chịu trách nhiệm bồi thường cho Bên B mọi thiệt hại phát sinh từ việc chậm trễ.*

4.4    Since Mr. Jimmy Tran is the beneficiary under the loan agreements of the Bank of America, N.A, therefore, Mr. Jimmy Tran commits with Party B to fulfill the obligation of the loan beneficiary on behalf of Party B with the highest responsibilities. In case Mr. Jimmy Tran failed to fulfill the obligations caused the bank of America, N.A foreclose the house, Party A shall compensate and refund Party B as follows:

*Vì lý do ông Jimmy Trần là người đứng tên trong các hợp đồng vay tiền của Bank of America, N.A, do vậy, ông Jimmy Trần cam kết với Bên B rằng ông sẽ thực hiện có trách nhiệm cao nhất đối với nghĩa vụ đứng tên khoản vay cho Bên B. Trường hợp vì bất cứ lý do nào mà ông Jimmy Trần để ngân hàng phát mại tài sản thì Bên A phải bồi thường hoàn trả cho Bên B:*

(i)    Refund of principal of USD$2,000,000.00 (said: Two million US dollar) in accordance with the loan agreement 1511/HDTD-2008 signed on November 15, 2008;
*Hoàn trả vốn gốc USD$2,000,000.00 theo hợp đồng vay 1511/HDTD-2008 ký ngày 15/11/2008;*

(ii)    Payment of USD$ 270,000 (Said: Two hundreds and seventy thousand US dollar) and interests until Party A paid off the debts;
*Trả tiền lãi 270.000 đô la Mỹ tiền lãi vay đến ngày Bên A trả hết nợ;*

(iii)    Refund of a sum of US$ 500,000 (said: Five hundreds thousands US dollar) which Mr. Jimmy Tran has borrowed from Vietnam Land Company.
*Hoàn trả 500.000 đô la Mỹ là số tiền do chính ông Jimmy Trần đã vay của Công ty Việt Nam Land*

(iv)    Payment of a penalty of US$ 1,000,000 to Party B and all arising damages and expenses including the lawyer's fee, interests, ect. The parties A agree the compensation shall be equally divided between Mr. Jimmy Tran and Ms. Dang Thi Hoang Yen.

4

10th Supp RRFP Dang 000147

*Trả tiền phạt hợp đồng 1.000.000 đô la Mỹ cho Bên B cùng tất cả tiền phát sinh bị thiệt hại bao gồm cả tiền thuê luật sư, tiền lãi phạt... Trách nhiệm bồi thường các bên đồng ý sẽ được chia đều 50% cho ông Jimmy Trần và bà Đặng Thị Hoàng Yến.*

4.3    Tan Duc Company Limited shall be responsible to take care, maintain and pay taxes for the purchased house.

*Công ty TNHH Tân Đức chịu mọi trách nhiệm chăm sóc, bảo trì, đóng thuế cho căn nhà đã mua.*

4.4.    Party A agrees to support Party B of maintenance, repair, customer introduction, brokerage ....throughout the period Party B owns the house

*Bên A đồng ý hỗ trợ cho Bên B bảo trì, sửa chữa, giới thiệu khách thuê nhà, môi giới, ....trong suốt thời gian Bên B sở hữu căn nhà.*

**The two parties have read over the agreement carefully and signed hereunder:**

*Hai bên cùng đọc kỹ và đồng ý ký tên dưới đây.*

5

10th Supp RRFP Dang 000148

| PARTY B 'S REPRESENTATIVE | | PARTY A 'S REPRESENTATIVE |
| ĐẠI DIỆN BÊN B | | ĐẠI DIỆN BÊN A |
| *(Signature, full name, seal)* | | *(Signature, full name)* |
| *(Ký tên, ghi rõ họ tên, đóng dấu)* | | *(Ký tên, ghi rõ họ tên)* |



| My-Dung Thi Dinh | Jimmy Tran | Hoang-Yen Thi Dang |
| Dated: 15/04/2010 | Dated: 15/04/2010 | Dated: 15/04/2010 |

6

10th Supp RRFP Dang 000149

# Index to exhibits in reporter's record

| Pet 1 (P1) | premarital agreement | page 1 of pdf |
|---|---|---|
| P2 | marriage license | p 28 of pdf |
| P3 (=R61) | Tran check $20k to US Southern Corp dated 11-16-05 | p30 |
| P4 | Tran check 5-10-06 to US Southern Homes $30,000 | p31 of pdf |
| P5 | deed of trust Mem house US southern homes LP grantor 8-31-05 | p32 |
| P5A | Deed into U S Southern reciting $1.8 Million Memorial prop 8-30-05 | p36 |
| P5B | guaranty Agreement to MetroBank $11111.8m from Dang and US Southern Corp | p45 |
| P6 | seond lien | p47 |
| P7 | WDVL US Sthn Homes LP to Tran, Memorial | p62 |
| P8 | DT Tran to countrywide Memorial | p64 |
| P9 | GWD Memorial Tran to Tran and Dang and her daughters | p79 |
| P10 | WD Memorial, Tran and Dang and Daughters to Tan Duc Construction Limited Co | p81 |
| P11A | photos Memorial House | p85 |
| P12 | Tan Duc CLC CHECK to BAC Home Loans Servicing | p95 |
| P15A | HCAD valuations history, Memorial house | p103 |

| | | |
|---|---|---|
| P17A | foreclosure deed Memorial $2,619,060.50 | p106 |
| P17B | SWD BOA to Mangalji $2,659,930.00, Memorial | p110 |
| P19A | tracing summary of Memorial house | p112 |
| P24 | photos - Tan Duc University etc | p113 |
| 32A | Texas records Sec State Tan Duc CLC | p121 |
| P32B | cert formation Tan Duc CLC | p122 |
| P32C | Tan Duc reg agent change | p123 |
| P32D | franchise tax public information report Tan Duc | p125 |
| P37C | sec state re Royal Crystal Co | p126 |
| P37B | PIR Royal Crystal Co signed Helen Ngo | p127 |
| P37A | certif formation Royal Crystal Co | p129 |
| P42FF | index to deed records , grantor Tan Duc | p130 |
| P45 | SWD U S Southern Corp to Tan Duc Vietnam conveying lots 1-78 and 1-31 blocks 1 nad 2 Venus Park | p135 |
| P46 | SWD Venus Park (all) from Tan Duc VN to Tan Duc TX | p140 |
| P47 | a retail deed, Venus Park | p145 |
| P48 | "  (wdvl) | p149 |
| FOR SPEED MATT IS GOING | TO SKIP INDEXING THE REMAINING NUMBEROUS RETAIL DEEDS FOR VENUS PARK | .......... |

| ..... | ...... | ...... |
|---|---|---|
| P48ZZ | index to real property records where Tan Duc is Grantor | p281 |
| P49 | retail deed Tan Duc | p286 |
| P50B | Title co statement for a retail Tan Duc sale | p296 |
| ...more retail deeds ... | ... | ... |
| P50E | summary of tan duc sales records | p447 |
| P50F | list of missing records | p448 |
| ... | .... | ... |
| P59B | D/T U S Southern grantor VenusPark | p481 |
| P59G | D/T   venus park | p490 |
| P59L | sub Trustee Deed David Smith to MetroBank venuspark | p502 |
| P59L | first modifcation extension renewal agreement  US Southern MetroBank (venus park) | p508 |
| P64 | HCAD  real property search records tan duc grantor | p522 |
| P64A | " | p527 |
| P93 | foreclosure sale deed | p532 |
| P118 | Buddy Trotter data | p537 |
| P122 | photos Mem House, Venus Plaza, Venus Park | p538 |
| P170A | foreclosure sale deed, venus park reserve | p549 |
| follows extensive venus park | foreclosure records not well | marked as exhibits |

| | | |
|---|---|---|
| P171 (marking uncertain) | CPA Ningang Yao records affidavit | p623 |
| P171A | Venus K-1 | p624 |
| P180 | LEHRER REPORT | p627 |
| P181C | Lehrer Supp Rpt response to Schulz | p644 |
| P?259 (hand marked with numerals only) | Bank Statement joint BOA | p661 |
| P265 | regarding sale of VP from MetroBank to US Southern Homes | p688 |
| P266 | more of sale VP from MetroBank to U S Southern, attaches retail house leases from lessor MetroBank to condo renters | p699 |
| P267 | letter accompanying US Southern $2M option strike price to MetroBank | p813 |
| P268 | release settlement agreement among MetroBank, US Southern entities, Handsel, and Dang | p815 |
| P269 | internal record MetroBank re VP loan classification | p837 |
| P270 | metrobank records | p838 |
| P271 | extension and renewal agreement metrobank, U S Southern | p842 |
| P272 | loan app to metrobank | p850 |
| P273 | metrobank loan renewal | p854 |
| P274 | metro bank records | |
| P275 | " | |

| | | |
|---|---|---|
| P274 | return of our subpoena on Dan Kelley of metrobank | p874 |
| P279 | release lis pendens of litigation US Sthn-MetroBank | |
| P280 | metrobank records | |
| P281 | screenprint of website of Vietnamland | p890 |
| P281A | screenprint of Vietnamland website | p900 |
| "282" | more of website screenprint | |
| "283" | " | |
| P284 | IRS form 8821 | p924 |
| P287 | photos of some of Jimmy projects | p926 |
| P288 - P291 | " | |
| P293 | assignment rents by Baco | p931 |
| P294 | vietnamese divorce petition by Mrs | p957 |
| P296 | Judge Sheri Dean's notice of decision that Vietnam did not have jurisdiction, that she does, and that the parties are still married | p970 |
| P297 | franchise tax PIR, Tan Duc texas | p975 |
| P298 | photo of a vietnamese couple | p977 |
| P300 | news release from Tan Tao Group "What is the Truth" | p978 |
| P303 | photo of billboard of UHY Mann Frankfort "Hired Guns" | p987 |
| P308 | HCAD report venus park | 0989 |
| P309 | " | |

| | | |
|---|---|---|
| P310 | realty listing Venus Plaza retail slots | |
| P311 | retail rent listing VP | |
| L1 | Lehrer CV | p999 |
| L5 | handwritten notes re VP tracts, summary Pham's disk | p1001 |
| L3 | Lehrer July supplemnent report | |
| "201" | listing for a condo | p1012 |
| P204 | Zwillow condo listing | |
| P207 | " | p1014 |
| P130 | news report property values on the rise | p1019 |
| P13 | HCAD 2009 $4,029,154 | p1021 |
| P80 | loopnet rental posting for Venus Plaza $15sf | p1024 |
| P125 | zwillow - Memorial $3,665,788 , and comparables | p1025 |
| "200" | calculation of totals of venus park values last time owned by ...[HCAD] | p1052 |
| P124 | updated countrywide appraisal, Memorial, Landsafe, 2009, $4,800,000.00 | p1063 |
| "201" | zwillow re a venus park home | p1086 |
| P69 | valuation township grove lane | p1089 |
| P80 | loopnet listing venus plaza | p1097 |
| P14 | HCAD listing of properties taxed to Tan Duc as owner | p1100 |

| | | |
|---|---|---|
| L2 | july 2013 initial-preliminary Lehrer report and apparent extensive attachments or else are mislabeled, documents re Dinh depo | p1101 |
| end RR22 | end RR22 | page 1185 |
| | | |

# THAT ENDS THE EXHIBITS IN RR22

# HERE COMMENCES THE EXHIBITS IN RR 23:

(several of the following exhibits duplicate items that appear in the above list bearing Petitioner Exhibit numbers)

| exhibit # | description | page of the pdf |
|---|---|---|
| 1 | prenup | 3 |
| 2 | deed, Memorial, to US Southern (2005) | 26 |
| 3 | D/T Memorial 2005 | 28 |
| 4 | guaranty agreement Dang guarantor loan to MetroBank | 37 |
| 5 | deed to Tran from U S Southern of Memorial | 41 |
| 6 | D/T Memorial , Tran's homme sole Countrywide loan | 43 |
| 7 | "purchase money security | 57 |

| | | |
|---|---|---|
| | document (second lien)" Memorial House | |
| 8 | Deed from Jimmy to Jimmy and Dang and her daughters, MEMORIAL | 72 |
| 9 | Deed by Jimmy giving away his interest in Memorial | 74 |
| 10 | SWD to US Southern appears to be initial purchase of Venus Park | 80 |
| 11 | Deed into US Southern 19.5 acres | 83 |
| 12 | Deed US Southern Corp to US Southern LLP, venus park | 87 |
| 13 | substitute trustees deed 2009 venus park | 89 |
| 14 | SWD MetroBank back to US Southern, VenusPark | 98 |
| 14A | SWD MetroBank to US Southern, Venus Park | 103 |
| 15 | substitute trustees deed into MetroBank | 108 |
| 16 | anothre substitute trustee deed into MetroBank | 113 |
| 17 | another sub trustee deed into MetroBank | 120 |
| 18 | SWD april 2010 US Southern Corp to Tan Duc CLC-Saigon, Venus Park | 126 |
| 19 | Deed Tan Duc Vietnam to Tan Duc Texas, Venus Park | 131 |
| 20 | UCC Financing Statement, City Bank to Venus Plaza LP | 136 |

| 21 | Deed 2007 U S SOuthern to Venus Plaza LP | 138 |
|---|---|---|
| 22 | D/T given by Venus Plaza LP | 141 |
| 23 | Foresclosure Sale Deed, on the City Bank loan 2,4M to Venus Plaza LP | 162 |
| 28 | $2M check US Southern for Venus Plaza | 165 |
| 29-32 | BOA wire transfer report VN Land to US Sthn Homes LP | 167 |
| 34 | 2007 Jimy Tran FIT 1040 | 171 |
| 36 | Tran responses to requests for admissions | 180 |
| "51" | fax from Jimmy to Martha Turner properties, 9-30-08 | 185 |
| "83" (? hard to read) | substitute trustees deed MEMORIAL 2011 | 188 |
| 84 | SWD from Bank of America to  purchaser Mr Mangali | 192 |
| 86 | Morris Architects floor plan, Tan Duc University main bldg | 194 |
| 87 | Order regarding motion to compel discovery | 199 |
| "89" | plat map of Venus Park and photos | 202 |
| "R-50" | plat map VP | 231 |
| R-52 | **Loan Agreement, Jimmy and Dang borrowing $2M US from Tan Duc <span style="color:red">RECITES HOUSE VALUE IS $5M USD</span>** (at page 235) | 233 |
| R-53 | "Settling Agreement" 2010 for "the Loan Agreement" <span style="color:red">**Values house at $5.770 M**</span> | 238 |

| | USD [AT PAGE 240] | |
|---|---|---|
| R-54 | "International Payment Order" - MULTIPLE | 244 |
| R-57 | MetroBank loan maturity notice for about half a million USD, Dec 2008, hand signed Dang | 276 |
| R-58 | refi title co settlement statement 2006 re venus park | 280 |
| R-59 | "Agreement for Multiple Parties"   between US Southern LP and Tan Duc in VN. 2009, Tan Duc lending, with Vietnam Land named as "wiring party" sending $3.2 Million | 281 |
| 60 | "international Payment Order" | 286 |
| R-61 | Past Due Notice from MetroBank re Memorial House loan | 300 |
| R-62 | metrobank past due notice to US Southern | 308 |
| R-63 | metrobank past due notice to US Southern | 316 |
| R-67 | loan payment notice hand signed by Dang 2007, venus plaza | 323 |
| 68 | U S Southern earnest money contracts for a retail sale | 357 |
| 69 | US Southern Homes cancelation forms (home not ready claim) | 371 |
| 71A - 71O | checks to Jimmy from US Southern | 380 |

| | | |
|---|---|---|
| 73 | list of checks to vendor US SOuthern $262,500, perhaps cred card payments for Jimmy alleged | 394 |
| 79 | report letter Ed Schulz to Todd Frankfort | 410 |
| R-80A | rebuttal report of Saul Solomon | 418 |
| R-87A | respondent Tan Duc wreitten offer of proof Petitioner Expert lacks qualifications | 438 |
| 88 | Tan Duc motion to redact all causes of action from 5th amended petition re community property | 441 |
| 89 | Tan Duc written objection to inclusion of causes of action regarding community property | 444 |
| R-90 | earnest money contract for retial sale in venus park | 447 |
| R-92 | handwritten notes on Houstonian stationery re Venus Plaza foreclosures | 457 |
| P-93 | foreclosure sale deed VP with handwriting on it | 458 |
| R-93 | handwritten notes about VP on Houstonian stationery | 461 |
| R-94 | **handwritten notes on Houstonian Stationery about Tran's interest in Memorial Home.** | 463 |
| P-18 | **Tran calculation of Value increase Mmeorial, with handwriting on it** | 464 |
| <span style="color:red">CR</span>-1 (note that this | **sec state texas** cert filing art formation Tan Duc texas | 465 |

| indicates a shift to "Co-Respondent's" evidence markings | | |
|---|---|---|
| CR-2 | sec state record re filing article incorp US SOuthern Crp | 466 |
| CR-3 | sec state record articles incorp US Southern Homes Inc | 467 |
| CR4 | deed 2005 into US Southern Corp of 9.8168 acres around Dairy Ashford | 468 |
| CR-5 | GWD into US SOuthern Homes LP from US Southern Corp of lots in block 1 of Venus Park | 473 |
| CR-7 | deed into US Shtn Homes LP. more of Venus Park | 475 |
| CR9 | **"oral deposition of Dinh Thi My Dung"  unclear why this is in the Reporter's Record** | 477 |
| CR14 | trustee deed to MetroBank Venus Park | 642 |
| CR15 | trustee deed to MetroBank more Venus Park | 649 |
| CR16 | trsutee deed Venus Park, is deuplicate? | 655 |
| CR18 | deed US Southern Corp to Tan Duc VN, dated 2010, Venus Park and the 19.5 acres | 661 |
| CR19 | deed Tan Duc VN to Tan Duc Texas | 666 |
| CR20A | "Agreement for Multiple Parties" Loan fro Tan Duc VN to US Southern Homes LP with "wiring party" Vietnam | 671 |

| | Land,    $3.2M  USD | |
|---|---|---|
| CR20B | Tan Duc check to Tax Assessor | 690 |
| CR20C | purported summary of Tan Duc expenses for Venus, $0.807 M USD and alleged backup documents | 694 |
| CR20D | Tan Duc list of payments for tax insurance etc Venus Park | 724 |
| CR20F 1-18 | photos Venus | 742 |
| CR21 | 2006 deed to US Southern Homes MEMORIAL House | 760 |
| CR22 | deed US Southern to Jimmy, homme sole | 762 |
| CR23 | deed from Jimmy to Jimmy, Dang, and Dang daughters | 764 |
| CR24A | **fax from Jimmy back to Martha Turner properties where the Realtor wrote Jimmy <span style="color:red">"I would recommend a listing of $9,999,000.00" Note attachments show was listed at $10,000,000.00</span>** | 766 |
| CR24BB | **envelope** addressed to Jimmy from COuntywide MOrtgage return to sender | 782 |
| CR25 | purported email from Jimmy to USHomes proposing they show the Mem house to a prospective buyer | 784 |
| CR26 | purported email from Jimmy instructing "you guys use Maya signature stamp on the contract va give it to mary" | 788 |
| CR26A | purported email suggesting that Tracy Nguyen was at US | 790 |

| | Southern Homes | |
|---|---|---|
| CR27 | email Tracey to Jimmy "no money in your bank" | 792 |
| CR28A | deed from Jimmy, etc to Tan Duc (2010) ["the" deed involved in the fraud claim](this is about the third copy in this reporter's record of exhibits of this same deed) | 793 |
| CR29B | BOA envelope addressed to Jimmy in Dallas on Belt Line Rd | 797 |
| CR30 | purported Jimmy email "don't tell Maya" | 805 |
| CR31 | purported email Jimmy to US Southern about paying prop tax | 809 |
| CR32 | purported email JT to USSH about wedding deposits | 811 |
| CR36 | deed CityBank ot Baco Investments 1.17 acres | 813 |
| CR38A | Jimmy's prior divorce decree | 817 |
| CR50 | handwritten notes of Jimmy's | 831 |
| CR50A | more of handwritten notes of Jimmy | 843 |
| CR51 - 52 | statement of joint bank account | 855 |
| CR60 | purported NaviBank record | 863 |
| CR61 | mechanic lien claiming affidavit for Tan Duc Company against US Southern for building Venus Park | 873 |
| CR62 | "Economic Contract"  Tan Duc Co to build houses and | 875 |

| | provide materials to US Southern | |
|---|---|---|
| CR71 | "list of bank transfers to Jimmy Tran" | 885 |
| CR81, 82, 85 | BOA check to pay prop tax | 887 |
| CR 90 | Textbook "Litigation Services Handbook, the role of the Financial Expert" | 892 |
| CR91 | Tan Duc written offer of proof Tan Duc USA checks for Venus Park expenses | 898 |
| CR92 | Tan Duc written offer of proof, contract between Jimmy and Tan Duc Vietnam | 900 |
| CR93 | Tan Duc written offer of proof sumary of expense for Venus Park | 902 |
| CR94 | Tan Duc offer of proof regarding Dang testimony and emails including exhibits 25 72 30 31 32 | 904 |
| CR95 | Tan Duc offer of proof of testimony of Maya Dang | 908 |
| CR96 | Tan Duc offer of proof about Dinh Thi My Dung | 911 |
| CR97 | Tan Duc offer of proof arrest warrant for Jimmy Tran | 922 |
| CR98 | Tan Duc offer of proof of international payment orders and evidence of signatures of Jimmy and Mayua | 926 |
| CR99 | Tan Duc offer of proof re mechanic lien claim | 929 |
| **HERE** | **ENDS** | **RR23** |

# TRACING

| P. Exhibit | Date - Description | Owners |
|---|---|---|
| PX 1 Prenup p.19-20 " p.21 n.6 | August 13, 2007, Agreed Value $5.8M | Tran, Dang and her daughters |
| PX 9 | October 10, 2007 Gen Warranty Deed | Tran, Dang & her daughters, 25% each |
| PX 10 – RX 10 | March 31, 2010 Special Warranty Deed | Tan Duc Construction Limited Company, a foreign corporation |
| PX 17A | April 5, 2011 Foreclosure | BAC Home Loans - Countrywide |